# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARY BOND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-10-452-F |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff, Ms. Mary Bond, seeks judicial review of a denial of disability insurance benefits (DIB) and supplemental security income benefits (SSI) by the Social Security Administration. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

I. **Procedural Background**

Plaintiff filed her applications for DIB and SSI on September 4, 2007, alleging a disability onset date of January 15, 2005. The Social Security Administration denied her applications initially and on reconsideration. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. *See* Administrative Record [Doc. #12] (AR) at 15-23. The Appeals Council denied Plaintiff's request for review. AR 1-3. This appeal followed.

## II. The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520; 416.920. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 17. At step two, the ALJ determined that Plaintiff has the following severe impairments: back problems, obesity and Crohn's disease. AR 17. At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 20.

The ALJ next determined Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she can only occasionally kneel, stoop, crawl, crouch or climb stairs and ramps and she can not climb ladders, ropes or scaffolds and cannot balance.

AR 21. At step four, the ALJ concluded that Plaintiff is able to perform her past relevant work as a ward clerk, data entry clerk and tag agent clerk. AR 22. The ALJ concluded, therefore, that Plaintiff is not disabled. AR 23.

## III. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir.

2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

**IV.   Claims Raised on Appeal**

Plaintiff raises three claims on appeal: (1) the ALJ erred as a matter of law by failing to properly evaluate the opinion of Plaintiff's treating physician, Dr. Coppedge; (2) the ALJ erred as a matter of law in failing to perform a proper step four analysis; and (3) the ALJ's RFC determination is not supported by substantial evidence.

**V.   Analysis**

**A.   Opinion of the Treating Physician, Dr. Coppedge**

Plaintiff claims the ALJ erred in giving "no weight" to the opinion of her treating physician, Dr. Coppedge. On May 21, 2008, Dr. Coppedge completed a form entitled: "Crohn's, Colitis & Lumbar Spine Residual Functional Capacity Questionnaire." AR 357-364. Dr. Coppedge opined that Plaintiff can sit 30 minutes at one time and stand 20 minutes

at one time. He further opined Plaintiff can sit and stand/walk about 2 hours in an 8-hour working day. Plaintiff would require a job which permits shifting positions at will from sitting, standing or walking. Plaintiff would need a job which permits ready access to a restroom. Plaintiff would need to take unscheduled breaks at least 5 times daily depending upon colon spasms and back pain. In addition, Plaintiff would often need to lie down or rest for at least 30 minutes at unpredictable intervals during an 8-hour working day. AR 359. Dr. Coppedge described the nature, frequency and length of contact with Plaintiff as: "Clinic patient since 2003." He described her diagnosis as "Crohn's disease, degenerative disc disease, osteoarthritis, depression, [and] migraine headaches." AR 357. He identified Plaintiff's symptoms as: chronic diarrhea, bloody diarrhea, abdominal pain and cramping, anal fissures, fatigue, pain, numbness in legs, weakness, weight gain, and chronic low back pain. AR 357.

The process an ALJ must follow in weighing a treating physician's opinion is clear: the ALJ "must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is 'no,' then the inquiry at this stage is complete." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004). But if the answer to the first inquiry is yes, then the ALJ must "confirm that the opinion is consistent with other substantial evidence in the record." *Id*. (quotation omitted). If the treating physician's opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record, the opinion must be given controlling weight. *See* Social Security Ruling 96-2p. Even if a

4

treating physician's opinion is not entitled to controlling weight, however, it is still entitled to deference and must be weighed using the relevant factors. *See id*. The factors include the length, frequency, nature, and extent of the treating relationship; the extent to which the opinion is supported by relevant evidence, particularly medical signs and laboratory findings; the extent to which the opinion is consistent with the record as a whole; the doctor's specialization; and other factors tending to support or contradict the opinion. See 20 C.F.R. § § 404.1527(d) and 416.927(d). Ultimately, the ALJ's decision must contain "reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), 1215 (quotation omitted).

In this case, the ALJ specifically stated that she was affording Dr. Coppedge's opinion "no weight" because there was no medical support for his conclusions in the record. The ALJ stated: "[Dr. Coppedge] makes no reference to testing, laboratory results or treatment. Further, the record only indicates a minimum number of contacts between the claimant and Dr. Coppedge. Those contacts are concerned mostly with the treatment of sinus problems exhibited by the claimant." AR 22 (*citing* Exhibit 9F, AR 304-355).

The ALJ's reasons for rejecting Dr. Coppedge's opinion are not supported by substantial evidence. First, contrary to the ALJ's statement that Dr. Coppedge did not reference testing, laboratory results or treatment, the record shows Dr. Coppedge performed range of motion testing and determined Plaintiff has decreased range of motion in her lower extremities. AR 357; *see also* AR 426. In addition, Dr. Coppedge made reference to testing,

5

lab results and treatment by checking the following boxes on the RFC form to identify "positive objective signs": tenderness, MRI, colonoscopy, muscle weakness, weight change and impaired sleep. AR 358.

Second, Dr. Coppedge treated Plaintiff at Southern Plains Medical Center for a period spanning approximately 5 years from August 2003 through May 2008. Although Dr. Coppedge primarily treated Plaintiff for sinus-related problems and some weight-loss issues during this time period, *see* AR 305, 306, 308, 309, Dr. Coppedge was certainly aware of her Crohn's disease and provided treatment related to that disease. *See* AR 308 ("[The patient] has occasional colon spasms because of Crohn's disease. She uses Soma 3 times daily when this flares up. She needs a new prescription for this medication today."). In addition, other doctors who practiced with Dr. Coppedge at the clinic, including Dr. Weedn and Dr. Lee, provided treatment for Plaintiff's Crohn's disease, migraine headaches and degenerative disk disease as reflected in the clinic notes. *See, e.g.*, AR 211 (referral of Plaintiff to Dr. Stokesberry, Plaintiff's gastroenterologist, by Dr. Lee); AR 400 (Dr. Lee's opinion regarding Plaintiff's Crohn's disease); and AR 400 (Dr. Weedn's treatment records identifying Plaintiff's "Medical Illnesses" to include migraine headaches, degenerative disk disease and Crohn's disease). Moreover, Dr. Stokesberry, the gastroenterologist who provided primary treatment for Plaintiff's Crohn's disease, corresponded with these doctors concerning Plaintiff's Crohn's disease. *See, e.g.,* AR 319.

Given the factual record set forth, the objective testing both referenced and performed by Dr. Coppedge, and the circumstances surrounding Plaintiff's long-term care at the clinic

by multiple doctors having knowledge of Plaintiff's treatment history for her severe impairments, the ALJ's reasons for rejecting Dr. Coppedge's opinion are not supported by substantial evidence. A remand, therefore, is required.

**B.     The ALJ's Step Four Analysis**

Plaintiff next claims the ALJ erred as a matter of law in conducting her analysis at step four. Specifically, Plaintiff claims the ALJ erred in failing to consider the mental demands of Plaintiff's past relevant work and whether she could meet them. The Commissioner responds the ALJ was not required to expressly discuss the mental requirements of Plaintiff's past relevant work because the ALJ's RFC did not include any mental limitations on Plaintiff's ability to perform work activities.

There are three phases of evaluation an ALJ must complete at step four of the sequential evaluation:

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

*Doyal v. Barnhart*, 331 F.3d at 760 (*quoting Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996) (citations omitted)). The ALJ's evaluation of a claimant's RFC must include specific findings and an explanation of how the administrative law judge analyzed the evidence and resolved inconsistencies or ambiguities. *See* Social Security Ruling (SSR) 96-8p.

7

1. **The ALJ's RFC Determination**

The ALJ determined Plaintiff's RFC allowed for the full range of sedentary work with the following additional physical limitations: "she can only occasionally kneel, stoop, crawl, crouch or climb stairs and ramps and she can not [sic] climb ladders, ropes or scaffolds and cannot balance." AR 21. But, for the reasons set forth below, it is unclear from the ALJ's decision whether the RFC determination also includes mental limitations, an issue critical to resolution of Plaintiff's claim regarding the ALJ's step four analysis. A remand, therefore, is required.

2. **The ALJ's Evaluation of Plaintiff's Mental Impairments**

At step two, the ALJ addressed Plaintiff's "medically determinable impairment of depression," found that it "does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities" and, therefore, that Plaintiff's depression is "nonsevere." AR 19. In making the step two determination, the ALJ applied the psychiatric review technique contained in the regulations. *See* 20 C.F.R. §§ 404.1520a, 416.920a.[1] The

---

[1]When confronted with a claim of mental impairment, the ALJ must apply a "special technique." *See* 20 C.F.R. §§ 404.1520a, 416.920a. Under this technique, once a claimant has established a medically determinable mental impairment, the ALJ must "rate the degree of functional limitation resulting from the impairment(s)." *Id*. §§ 404.1520a(b)(2), 416.920a(b)(2). The ALJ does this by rating the claimant's limitations in "four broad functional areas," which are "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id*. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ then uses the functional-limitation ratings to determine the severity of the mental impairment(s). *Id*. §§ 404.1520a(d), 416.920a(d). To document the application of the special technique, the ALJ's "written decision must incorporate the pertinent findings and conclusions based on the technique. . . . The decision must include a specific finding as to the degree of limitation in each of the functional areas. . . ." *Id*. §§ 404.1520a(e)(2), 416.920a(e)(2).

ALJ specifically considered the findings of agency psychologist Cynthia Kampschaefer, expressed in the Psychiatric Review Technique form (PRT) and found in her decision that:

> The claimant's medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere. In making this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404 Subpart P, Appendix I). These four broad functional areas are known as the 'paragraph B' criteria. The first functional area is activities of daily living. In this area, the claimant has mild limitations. The next functional area is social functioning. In this area, the claimant has mild limitations. The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitations. The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation which have been of extended duration.

AR 19. *See also* AR 20 ("Because the claimant's medically determinable mental impairment causes no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere [citations omitted]." The ALJ also adopted the findings of Dr. Kampschaefer as to the medical evidence of Plaintiff's depression and, in particular, the finding that once Plaintiff was prescribed medication for depression, her condition was much improved. AR 19; *see also* AR 294.

Plaintiff does not challenge the ALJ's RFC assessment on grounds that it contains no mental limitations. Instead, Plaintiff, in essence, puts the cart before the horse, and claims at step four the ALJ should have evaluated "the effect Mrs. Bond's mild limitations in the domains of activities of daily living, social functioning, and concentration, persistence or

9

pace would have on her ability to perform those jobs." *See* Plaintiff's Brief at 23. But in making this argument, Plaintiff fails to recognize that the "mild limitations" speak only to whether her depression is severe or non-severe, for purposes of steps 2 and 3 of the sequential evaluation process. The "mild limitations" do not *per se* equate to any functional limitation for purposes of RFC assessment. *See* Social Security Ruling 96-8p, 1996 WL 374184 at * 4 ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.").

Moreover, Plaintiff fails to identify any evidence of record demonstrating how Plaintiff is functionally limited by her depression. "[W]hen there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." *Id*. at *3.

Nonetheless, neither party has addressed language in the decision that this Court finds dispositive of the issue. In making her findings at step two and step three, the ALJ stated:

> The limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listings of Impairments (SSR 96-8p). *Therefore, the following residual functional capacity assessment reflects the*

> *degree of limitation the undersigned has found in the 'paragraph B' mental function analysis.*

AR 20 (emphasis added). The emphasized language suggests the ALJ's RFC assessment incorporates the mild limitations in activities of daily living, social functioning and concentration, persistence or pace set forth in the paragraph B criteria.[2] Conversely, it is possible, the ALJ's intent was to find no mental functional limitations as ultimately expressed in the RFC.

In *Dorman v. Astrue*, 368 Fed. Appx. 864 (10th Cir. March 3, 2010) (unpublished op.), a case relied upon by Plaintiff, the Tenth Circuit held a remand was required where, as here, the ALJ analyzed only the physical demands of the claimant's past relevant work in finding the claimant not disabled at step four. *Id*. at 866. The claimant's RFC contained "mild mental impairments" which included the identical mild restrictions in activities of daily living, social functioning and concentration, persistence and pace as those at issue here. *Id*. at 866.

The Commissioner contends *Dorman* is not controlling here because in *Dorman* the RFC determination expressly included mental limitations and here, the RFC contains no mental limitations. But, as the Court has discussed, it is not clear whether the ALJ intended mental limitations to be included in the RFC given the ambiguous nature of the language

---

[2]The fact that the mental limitations are mild does not render any error harmless. Even if an impairment is not severe, it does not become irrelevant. All medically determinable impairments, including non-severe impairments, must be taken into account in assessing a claimant's RFC. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

used in the ALJ's decision.[3] Accordingly, a remand is required. *Compare Hunter v. Astrue*, 2011 WL 752115 at * 4 (D. Kan. Feb. 24, 2011) (unpublished op.) (remand required where ALJ's RFC decision that Plaintiff could perform full range of sedentary work did not account for claimant's mild limitations in activities of daily living and social functioning); *Risley v. Astrue*, 2010 WL 3860565 at * 3 (E.D. Okla. Sept. 15, 2010) ("While the ALJ's determination that the claimant suffered from only mild functional limitations might arguably equate to a finding that her depression was insignificant, the Court may not make this finding for the ALJ.").

On remand, the ALJ should clarify whether the RFC incorporates any functional mental limitations and the ALJ's decision should reflect the basis for the decision. In addition, if the RFC does incorporate mental limitations, the ALJ must proceed with a proper step four analysis, determining the physical and mental demands of Plaintiff's past relevant work and whether Plaintiff has the ability to meet the job demands of that past relevant work despite any mental and/or physical limitations found in the RFC. The ALJ is reminded that at each of the step four phases, the ALJ's findings must be specific and the ALJ must explain how she analyzed the evidence and resolved inconsistencies or ambiguities.

---

[3]The Court finds this result further compelled by the fact that the paragraph B criteria allow for a finding of "none" in rating the degree of functional limitations, yet the ALJ adopted the findings that there were "mild limitations" in three of the four functional limitation categories. AR 19; *see also* AR 292.

### C. The ALJ's Failure to Include a Sit/Stand Option and Proximity to a Bathroom in the RFC Determination

As her final claim of error, Plaintiff contends the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to include, as functional limitations, either a sit/stand option or the need for proximity to a bathroom.

#### 1. Sit/Stand Option

The ALJ found Plaintiff's severe impairments included "back problems." AR 17. The ALJ relied on a consultative examination on January 3, 2008, *see* AR 275-278, in determining Plaintiff could perform sedentary work with additional physical limitations. AR 22. The ALJ did not, however, include a sit/stand option in the RFC.

Dr. Coppedge's functional assessment supports a sit/stand option. He checked "yes" to the question: "Does your patient need a job which permits shifting positions *at will* from sitting, standing or walking?" AR 359. In addition, Dr. Coppedge opined Plaintiff could sit only 2 hours in an 8-hour day. *Id*. As set forth above, the ALJ's reasons for giving "no weight" to Dr. Coppedge's opinion are not supported by substantial evidence. Specific to the sit/stand option, Dr. Coppedge performed objective testing of Plaintiff and determined she had limited range of motion in her lower extremities. On remand, the weight the ALJ chooses to give Dr. Coppedge's opinion and, in particular, Dr. Coppedge's functional assessment may affect the ALJ's RFC determination. Accordingly, the Court need not further address this issue. The ALJ is reminded, however, that the RFC assessment must include all limitations borne out by the evidentiary record. *See* Social Security Ruling 96-8p, 1996 WL 374184 at

*5 ("[t]he RFC assessment must be based on all of the relevant evidence in the case record," including medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, medical source statements, effects of symptoms, and evidence from attempts to work).

### 2. **Proximity to a Bathroom**

Plaintiff also claims the RFC is not supported by substantial evidence because the RFC did not include a limitation that Plaintiff be in close proximity to a bathroom. The ALJ provided the following reasons in support of not including this limitation:

> The claimant testified she had constant problems due to Crohn's disease. But her medical records indicate that she barely mentioned her Crohn's disease at medical appointments over the years, especially after the birth of her child. And when she did it was to deny any problems.

AR 21.

Nonetheless, Dr. Coppedge opined that limitations of Plaintiff included provision for "access to bathroom due to colon spasms, diarrhea." AR 360. As Plaintiff notes, Dr. Coppedge's opinion appears to be supported by other medical evidence in the record not addressed by the ALJ:

> [T]he ALJ did not discuss any of the 2002 and 2003 evidence indicating Mrs. Bond's problems with nausea, vomiting, diarrhea, abdominal tenderness, and pilondial cysts. [citations omitted]. The ALJ also noted Mrs. Bond's EGD study showing Crohn's disease in early 2004 but not nausea, vomiting diarrhea, rectal bleeding, and abdominal tenderness with findings of bowel wall thickening and colon ulcerations during that same time. [citations omitted]. The ALJ also failed to mention Dr. Lee's July 2004 letter noting that Crohn's disease involves colon spasms, chronic bloody diarrhea, nausea, vomiting, cysts, arthritis, and poor eyesight making daily living very difficult

14

> and sometimes resulting [in] patients with uncontrolled episodes needing constant proximity to a bathroom.

*See* Plaintiff's Brief at 25-26. The Court, however, need not reach this issue. As with the sit/stand limitation, here the weight given to Dr. Coppedge's opinion on remand may affect the ALJ's RFC determination. On remand, should the ALJ reject Dr. Coppedge's RFC assessment with respect to the provision for access to a bathroom, the ALJ should discuss the uncontroverted evidence she chooses to rely on as well as the significant probative evidence she rejects. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).

In sum, a remand is required for proper evaluation of Dr. Coppedge's treating physician opinion which may necessarily affect the ALJ's RFC determination regarding limitations providing for a sit/stand option and close proximity to a bathroom. In addition, a remand is required to determine whether the ALJ's RFC assessment includes functional limitations due to Plaintiff's mental impairments, namely depression. On remand, the ALJ should clarify whether the RFC includes any such limitations. The ALJ's findings must be specific and the ALJ must explain how she analyzed the evidence and resolved any inconsistencies or ambiguities.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. § 636 and Fed.R.Civ.P.72. Any such objections should be filed with the Clerk of the District Court by June   16th  , 2011.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this   26th   day of May, 2011.

*/s/ Valerie K. Couch*

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE